**UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF NEW YORK**

_____

RICHARD J. MENKES
8 Serra Lane                                             **COMPLAINT**
Massena, New York 13662,

                Plaintiff,                         Plaintiff Demands A Jury Trial


v.                                                       Civil Action No.: _____

ST. LAWRENCE SEAWAY PILOTS' ASSOCIATION,
P.O. Box  274, 733 East Broadway
Cape Vincent, New York 13662

      Serve:  Roger Paulus, President
             P.O. Box  274, 733 East Broadway
             Cape Vincent, New York 13662

             Defendant.
_____


**COMPLAINT FOR VIOLATION OF ANTI-TRUST LAWS**

      Plaintiff, Richard J. Menkes, by and through his undersigned counsel, hereby complains

and alleges as follows:

**INTRODUCTION**

      1.     This action arises from anti-competitive and exclusionary business practices

engaged in by a membership organization, known as the St. Lawrence Seaway Pilots Association

("SLSPA").  The SLSPA is an organization of independent river and lake pilots that dominates,

monopolizes, and controls the market for shipping pilotage services in a specific area of the

Great Lakes and St. Lawrence Seaway shipping lanes.   By its nature, the SLSPA also constitutes

a conspiracy in restraint of trade.  The SLSPA and its members and officers have also engaged in

concerted and conspiratorial actions to deny Plaintiff's right to engage in his legitimate business activities as a ship pilot.

## PARTIES

2.      Plaintiff, Richard J. Menkes, is an individual residing in the State of New York. He is a citizen of the State of New York.  Plaintiff is duly licensed and qualified to pilot ships and vessels in the St. Lawrence Seaway and Great Lakes, and holds the title of "Captain." Captain Menkes is a highly skilled and experienced pilot.  He is one of only a handful of people who are licensed and qualified to serve as a pilot in the St Lawrence Seaway and Great Lakes. Indeed, there is a shortage of people with such skills and authorizations.

3.      Defendant SLSPA is a private business association comprised of a combination of non-employee independent members.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 1331; and 15 U.S.C. §§ 1-3.

5.      Venue is proper in this Court because the Defendant is headquartered in this District, conducts business in this District, and the cause of action arose in substantial part within this District.

## TRADE AND COMMERCE

6.      The activities of Defendant, as described in this Complaint, occurred within interstate commerce; had, and continue to have a substantial effect on interstate trade and commerce; and have unreasonably restrained, and continue to retrain interstate trade and commerce.

2

## FACTS

7.      For more than 30 years, Captain Menkes has served as a registered pilot working

on the Great Lakes and St. Lawrence Seaway in a geographic area known as District One.

Specifically, as set forth in 46 CFR § 401.300(a)(1), District One encompasses:

> All United states waters of the St. Lawrence River between the
> international boundary at St. Regis and a line at the head of the river running (at
> approximately 127° True) between Carruthers Point Light and South Side Light
> extended to the New York shore.

8.      District One is a distinct market for pilots seeking to engage in pilotage activities

and there is no reasonable substitute market in the same geographic area.

9.      The U.S. Coast Guard regulates certain training, qualification, and registering of

pilots working in District One.

10.      In accordance with Coast Guard Regulations, the Coast Guard may authorize

"voluntary" associations of pilots to provide a pool of manpower sufficient to meet the pilotage

needs of the United States waters of the Great Lakes, including District One.

11.      In accordance with Coast Guard Regulations, a voluntary association authorized

to establish a pilot pool may require registered pilots to authorize the pool to execute a written

authorization for the pool to bill for certain services directly relating to performance of actual

pilotage services, deduct authorized expenses, and to comply with the working rules and other

rules of the pool relating to such facilities and services.

12.      At all times material to this case, the Coast Guard has recognized the SLSPA as

operating a voluntary pool of pilots working in District One.

13.      The SLSPA, however, has abused its status as a voluntary pilotage pool and has

instead monopolized pilotage business in District One.

14.    The SLSPA does not operate a pilotage pool on a voluntary basis.  Instead it operates the pilotage pool exclusively for its own members.   Indeed, in order to work through the so-called "voluntary" pool of pilots operated by the SLSPA, the SLSPA aggressively seeks to require that a pilot become – and remain –  a full member of the SLSPA.

15.     The SLSPA maintains sole authority over who may become a member of the SLSPA.   In order to become a member of the SLSPA, pilots are required, inter alia, to purchase a share in Seaway Pilots Inc., a private corporation that owns pilot boats and property.  Each share is currently worth approximately sixty thousand dollars ($60,000.00).  In order to become a member of the SLSPA, a pilot must be recommended to the U.S. Coast Guard for full registration by the voting members of SLSPA.  The SLSPA requires its members to pool their earnings and pay expenses, and then divide the remaining amounts among themselves. Furthermore, the SLSPA also engages in legislative, political and lobbying activities.

16.    The SLSPA also aggressively seeks to make sure that non-SLSPA members do not perform pilotage duties in District One.   In this regard, the SLSPA operates much like a medieval guild.  As such, it limits District One pilotage work opportunities only to those pilots that it allows to become – and remain –  shareholding  members of the SLSPA.

17.    The SLSPA is not a labor organization.

18.    Plaintiff was a member of  SLSPA until December, 2000, at which time he resigned from that organization.

19.    Despite resigning from the SLSPA, Plaintiff sought to continue to work in District One as an "independent" pilot.  At all times, Plaintiff maintained his license and qualifications to serve as a pilot in District One.

4

20.     After Plaintiff resigned from the SLSPA, the Coast Guard's Director, Great Lakes Pilotage, in a letter dated February 26, 2001, advised Plaintiff that his "resignation from the St. Lawrence Seaway Pilots Association has no effect on your status as a Registered Pilot."  After Plaintiff resigned from the SLSPA, the Coast Guard registered Plaintiff directly as a pilot for the 2001, 2002, and 2003 shipping seasons.

21.     Not long after Plaintiff resigned from SLSPA, however, and continuing to present, the SLSPA and its officers sought to prevent him from working as an independent registered pilot.   The Coast Guard's former Director, Great Lakes Pilotage, US Coast Guard, in a March 7, 2001 determination, concluded that SLSPA could not do that.

22.     The March 7, 2001 ruling provides in pertinent part:

Captain Menkes will remain in District 1 as a U.S. pilot and will be available for dispatch whether or not he belongs to a pilotage pool.  A pilotage pool is a voluntary association of registered pilots.  46 U.S.C. 9304.  There is no mandatory requirement in statute or regulation that requires Great Lakes registered pilots to belong to a pool in order to provide pilotage service.  Captain Menkes' resignation from the SLSPA does not prevent him from being dispatched nor does it provide any basis for the Coast Guard to deny him the opportunity to continue to earn his livelihood as a U.S. registered pilot.  Captain Menkes has a vested property right in his certificate of registration that the Coast Guard cannot revoke simply because he does not belong to a pilotage pool. . . . Therefore, based on my authority over operation found at 46 C.F.R. §§ 401.320(d)(5) and 401.720 and in order to maintain adequate and effective pilotage service in accordance with 46 C.F.R. § 401.220(a), I intend to dispatch Captain Menkes as an independent pilot in District 1.

This action is consistent with the Coast Guard's statutory and regulatory authority in that the use of pilots outside the pool system is clearly contemplated by the Great Lakes Pilotage Act and the regulations (46 C.F.R. § 401.340(a)-(c)) so long as the pilot complies with the requirements outlined in the Act and regulations.

23.     The SLSPA, however, was undeterred in its efforts to preclude Plaintiff from working as an independent pilot in District 1.  Specifically, in a further concerted effort to exclude Plaintiff from work as a non-SLSPA member District One pilot, SLSPA and its

5

members began filing false and malicious complaints to the Coast Guard and others alleging that

they feared for their safety at the hands of Plaintiff.

24.    The Coast Guard officially investigated the complaints by SLSPA against

Plaintiff, and prepared a lengthy report.   In this regard, the Coast Guard's report concluded that

the SLSPA is a dishonest, exclusionary, and corrupt organization that has engaged in a concerted

effort to punish and blacklist individuals who do not purchase a share in a related organization

and "tow the line."  Specifically, the Coast Guard report expressly concluded as follows:

. . . . .

2.    *The striking similarities in wording, sentence structure,
      and paragraph content, indicate members of the SLSPA
      may have carefully coordinated and scripted their letters to
      Director Flyntz concerning Capt. Menkes between Mary
      29, 2001 and June 21, 2001...*

3.    *There is no factual base to support the claims of members of the
      SLSPA that they fear for their physical safety in the presence of
      Capt. Richard J. Menkes....*

4.    *Members of the SLSPA purposely bait Capt. Menkes.....*

5.    *...[the evidence] suggests that the SLSPA coordinated a deliberate
      campaign to bait Capt. Menkes to harass and defame Capt.
      Menkes in an effort to discourage him from piloting in District 1
      and deprive him of his status as an independent pilot....*

6.    *That members of the SLSPA misrepresent and exaggerate
      facts...*

7.    *That representatives of the SLSPA misled this Investigating Officer
      concerning their knowledge of an employee's unlisted telephone
      number...*

8.    *That the SLSPA's Training Committee attempted to
      improperly terminate [name redacted] as an applicant
      pilot in 1997...*

9.    *That the SLSPA attempted to coerce [name redacted] to buy a share of stock in Seaway Pilots Inc., an affiliated corporate arm of the SLSPA....*

10.    *That the SLSPA is presently incapable of providing training for applicant pilots in a professional and objective manner....*

Furthermore, the Coast Guard's investigating official expressly recommended, among other things:

2.    *that the Director of Great Lakes Pilotage suspends the SLSPA's Certificate of Authorization.*
. . . . .
5.    *The Director review the hiring procedures of the SLSPA, specifically the requirement for pilots to purchase a share of Seaway Pilot's Inc. as a condition for acceptance into the Association, and that failure to obtain an appropriate endorsement by the SLSPA will result in the termination of an applicant pilot.*

25.    The conclusions outlined and quoted in Paragraph 24 above, are true and correct.

26.    Commencing in the 2004 shipping season, the Coast Guard did not register Plaintiff directly, but instead obtained pilots through the SLSPA as a designated "voluntary" pilotage pool.   Plaintiff has executed an authorization agreeing to permit SLSPA to deduct appropriate fees and expenses from his wages and agreeing to be bound to the SLSPA's rules.

27.    The SLSPA, however, continues to refuse to permit Plaintiff to work through the pilotage pool in District One as an independent pilot despite the fact that there continues to be a significant shortage of pilots in District One.

28.    The SLSPA has advised others, including the Canadian pilotage pool that Plaintiff was to be removed from the list of eligible pilots in District One.

29.    The very nature of, organization, operation and structure of the SLSPA constitutes an illegal restraint of trade and monopoly.

30.     The SLSPA and its officers and members have maliciously sought to prevent Plaintiff from working as a pilot in District One in order to preserve for themselves exclusive control over pilotage business in district one.

31.     The SLSPA and its officers and members have conspired to blacklist Plaintiff and prevent him from working in District One.

## COUNT I - MONOPOLY

32.     The allegations of paragraphs 1 through 31 are hereby incorporated and realleged.

33.     The Sherman Anti-Trust Act, 15 U.S.C. § 1, declares illegal, among other things, "every contract, combination...or conspiracy, in restraint of trade or commerce among the several states."

34.     The SLSPA is exclusionary, predatory and has monopolized the pilotage work in District One.

35.     The SLSPA does not permit non-member pilots to perform their services in District One.

36.     The very nature of, organization, membership requirements, operation and structure of the SLSPA constitute an illegal restraint of trade in violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1.

## COUNT II - CONSPIRACY IN RESTRAINT OF TRADE

37.     The allegations of paragraphs 1 through 36 are hereby incorporated and realleged.

38.     Plaintiff is qualified and possesses the proper licenses to work as a pilot in District One.

39.     The SLSPA and its officers and members have maliciously sought to prevent Plaintiff from working as a pilot in District One in order to preserve for themselves exclusive control over pilotage business in District One.

40.     Plaintiff has indicated his willingness to pay any proper fees and authorized expenses to the SLSPA in order to work in District One, albeit as an independent pilot.

41.     The SLSPA has blacklisted Plaintiff and deprived him of his ability to earn a livelihood as a pilot in District One.

42.     The SLSPA will not allow Plaintiff to obtain work through the pilotage pool because he is not a member of the SLSPA.

43.     By engaging in such conduct, the SLSPA is engaging in a conspiracy in restraint of trade in violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1 *et seq*.

## COUNT III - STATE LAW MONOPOLY AND CONSPIRACY IN RESTRAINT OF TRADE

44.     The allegations of paragraphs 1 through 43 are hereby incorporated and realleged.

45.     By engaging in its malicious and exclusionary conduct toward Plaintiff and by monopolizing pilotage opportunities as described in this complaint, Defendant has violated New York State's General Business Law Section 340 ("Donnelly Act").

## COUNT IV – VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS

46.     The allegations of paragraphs 1 through 45 are hereby incorporated and realleged.

47.     The Coast Guard has authorized the SLSPA to serve as a pilotage pool in District One.  Defendant's operation of the SLSPA as a pilotage pool constitutes state action.  The SLSPA operates under color of federal law.

9

48.     Defendant's conduct as described herein, and the requirement for full membership in the SLSPA as a condition of working as a District One pilot, infringes upon Plaintiff's freedom of association as guaranteed in the First Amendment to the United States' Constitution.

49.     **WHEREFORE**, Plaintiff respectfully requests that this Honorable Court issue a judgment in Plaintiff's favor and order Defendant to:

A.     Make whole and compensate Plaintiff for the loss of his employment opportunities in the 2004 and subsequent shipping seasons.

B.     Reinstate Plaintiff's shipping status as an independent pilot for the 2004 and subsequent shipping seasons.

C.     Permit Plaintiff an opportunity to work as a pilot in District One in the 2006 and subsequent shipping seasons.

D.     Cease and desist from requiring Plaintiff to become a member of the SLSPA as a condition of working.

E.     Cease and desist from interfering with Plaintiff's ability to work as a District One pilot.

F.     Cease and desist from monopolizing pilotage opportunities in District One.

G.     Compensate Plaintiff in the amount of triple the damages resulting from Defendant's illegal restraint of trade and conspiracy.

H.     Award Plaintiff reasonable costs and attorney's fees.

I.     Grant such other relief as the Court deems appropriate.

50.     Plaintiff demands a jury to try all claims triable by a jury in this action.


Respectfully submitted,


 s/ Ross P. Andrews

Ross P. Andrews
Bar No. 506874
Satter & Andrews, LLP
217 South Salina Street, 6th Floor
Syracuse, New York  13202
(315) 471-0405
(315) 471-7849 (fax)
randrews@satterandrews.com
Local Counsel for Plaintiff

Edward M. Gleason, Jr.
Beins, Axelrod, Gleason & Gibson, P.C.
1625 Massachusetts Ave., N.W., Suite 500
Washington, DC 20036
(202) 328-7222
(202) 328-7030 (telecopier)
egleason@beinsaxelrod.com

Richard W. Gibson
Beins, Axelrod, Gleason & Gibson, P.C.
1625 Massachusetts Ave, N.W.  Suite 500
Washington, D.C.  20036
(202) 328-7222
(202) 328-7030 (telecopier)
rgibson@beinsaxelrod.com

Counsel for Plaintiff