**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RICHARD J. MENKES,**

                              **Plaintiff,**


           **v.**                                             **06-CV-339**


**ST. LAWRENCE SEAWAY PILOTS' ASSOCIATION,**

                              **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                         **DECISION & ORDER**

**I.  INTRODUCTION**

        The plaintiff, Richard J. Menkes, brought this action against the St. Lawrence

Seaway Pilots' Association ("SLSPA") alleging violations of federal antitrust law, New York

State antitrust law, and Plaintiff's First Amendment right to freedom of association.

SLSPA has moved to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, arguing that the complaint  fails to state a claim upon which relief can be

granted.  Plaintiff has opposed this motion.

**II.  STANDARD OF REVIEW**

        The pending motion tests the sufficiency of the claims pleaded in the complaint.  As

the Supreme Court has held,  "a complaint must only include 'a short and plain statement

of the claim showing that the pleader is entitled to relief.'" <u>Swierkiewicz v. Sorema N.A.</u>,

                              1

534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)).  "This simplified notice pleading relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Id.  Thus, a complaint is sufficient if it gives the defendant fair notice of the plaintiff's claims, the grounds upon which they rest, and states claims upon which relief could be granted.  Id. at 514.  Claims brought pursuant to the federal antitrust laws are not subject to a heightened pleading requirement.  See Twombly v. Bell Atlantic Corp., 425 F.3d 99, 108 (2d Cir. 2005).

On a Rule 12(b)(6) motion, the Court accepts as true all factual allegations in the complaint.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).  "Further, the court should construe the complaint liberally and draw inferences from the plaintiff's allegations in the light most favorable to the plaintiff."  Tomayo v. City of N.Y., 2004 WL 137198, at * 5 (S.D.N.Y. Jan. 27, 2004)(citing Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999)).  However,

> 'sweeping legal conclusions cast in the form of factual allegations' do not suffice to state a claim even at the Rule 12(b)(6) stage. 5A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed. 1990). 'While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice.' Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp., 309 F.3d 71, 74 (2d Cir. 2002).  Thus, the complaint must allege sufficient facts that would make the pleaded legal theories plausible.  See Twombly, 425 F.3d at 111 ( "The factual predicate that is pleaded does need to include [antitrust] conspiracy among the realm of plausible possibilities. If a pleaded conspiracy is implausible on the basis of the facts as pleaded - if the allegations amount to no more than "unlikely speculations" - the complaint will be dismissed.); Todd v.

2

Exxon Corp., 275 F.3d 191, 200 (2d Cir. 2001)("To survive a Rule 12(b)(6) motion to dismiss [in a Sherman Act case], an alleged product market must [*inter alia* ] . . . be 'plausible.' ") (citing Hack v. President & Fellows of Yale Coll., 237 F.3d 81, 86 (2d Cir.2000), cert. denied, 534 U.S. 888, 122 S.Ct. 201, 151 L.Ed.2d 142 (2001)); see also Associated Gen. Contractors of California, Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983)(It would be improper "to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged.").

In deciding a Rule 12(b)(6) motion, review "is generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004)(citations omitted).  However, the Court may also look to public records, including complaints filed in other courts. Id. (citations omitted).   Dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir. 2003)(citation omitted), or where the complaint fails as a matter of law. Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002).

## III.  BACKGROUND

"Plaintiff is duly licensed and qualified to pilot ships and vessels in the St. Lawrence Seaway and Great Lakes, and holds the title of 'Captain.'" Compl. ¶ 2.  Plaintiff asserts that he is "a highly skilled and experienced pilot [and] one of only a handful of people who are

3

licensed and qualified to serve as a pilot in the St Lawrence Seaway and Great Lakes." Id.

He further asserts that he has served as a pilot in a geographic region known as "District

One"[1] for over 30 years, id. at ¶ 7, and that "District One is a distinct market for pilots

seeking to engage in pilotage activities and there is no reasonable substitute market in the

same geographic area." Id. ¶ 8.   Because Plaintiff's claims arise within the context of the

Great Lakes Pilotage Act of 1960, codified at 46 U.S.C. Chapter 93 ("GLPA"), it is

necessary to examine the contours of the GLPA to fully understand his claims.

> [T]he current system of pilotage in the Great Lakes and St. Lawrence Seaway area is regulated by the Great Lakes Pilotage Act of 1960.   46 U.S.C. Ch. 93. The Coast Guard prescribes standards for Great Lakes pilots and registers those who meet the statutory requirements for service.   46 U.S.C. § 9303 (2000).   The Secretary of Commerce may authorize the formation of a pilotage pool by a voluntary association of U.S. registered pilots to ensure the "efficient dispatching of vessels and rendering of pilotage services."   46 U.S.C. § 9304(a) (2000).   When the authorized pilotage pool is not providing adequate pilotage service because of physical or economic inability, the Director of Great Lakes Pilotage may order any U.S. registered pilot to provide pilotage service.   46 C.F.R. § 401.720(b) (2005).
>
> Indeed, the express language of the statute itself grants *the Director* the authority and discretion to determine if and when the authorized pilotage pool is not providing adequate and efficient pilotage services and, by extension, if and when outside help in the form of independent U.S. registered pilots is required to fill in the gaps.   46 U.S.C. §§ 9304, 9306;   46 C.F.R. §§ 401.300(a)(1), 401.720(b), 402.320(a)(1).

Menkes v. Dep't of Homeland Sec., 402 F. Supp.2d 204, 208 (D.D.C. 2005) (emphasis in

original).

---

[1]District One is defined as:

All United States waters of the St. Lawrence River between the international boundary at St. Regis and a line at the head of the river running (at approximately 127° True) between Carruthers Point Light and South Side Light extended to the New York shore.

46 C.F.R. § 401.300(a)(1).

Under the pertinent regulations, the Coast Guard approves the number of registered pilots, 46 C.F.R. § 401.220, the nature, organization, and operation of pilotage associations, 46 C.F.R. § 401.320, the organizational structure and working rules for the pilotage pools, 46 C.F.R. § 401.340, and the rates and service standards of pilotage services. 46 C.F.R. § 401.405. The SLSPA, which is alleged to be a "private business association comprised of a combination of non-employee independent members," Compl ¶ 3, is the authorized pilotage pool in District One. Menkes v. Dep't of Homeland Sec., 402 F. Supp.2d at 205, n. 1 ("The Director, pursuant to this authority, authorized the formation of a pool in District One and approved the SLSPA's application to run the pool.")(citing 46 C.F.R. §§ 401.300(a)(1), 402, 320(a)(1)).

> In accordance with Coast Guard Regulations, a voluntary association authorized to establish a pilot pool may require registered pilots to authorize the pool to execute a written authorization for the pool to bill for certain services directly relating to performance of actual pilotage services, deduct authorized expenses, and to comply with the working rules and other rules of the pool relating to such facilities and services. At all times material to this case, the Coast Guard has recognized the SLSPA as operating a voluntary pool of pilots working in District One.

Compl. ¶¶ 9-12.

Plaintiff was a member of the SLSPA until December 2000 at which time he resigned. Id. ¶ 18. He sought, at that time, to continue to work in District One as an "independent" pilot, and was registered in this regard by the Coast Guard for the 2001, 2002, and 2003 shipping seasons. Id. at ¶¶ 19, 20. However, Plaintiff contends that "[n]ot long after Plaintiff resigned from SLSPA, . . . and continuing to present, the SLSPA and its officers sought to prevent him from working as an independent registered pilot. Id. ¶ 21. In this regard, Plaintiff alleges that "in a further concerted effort to exclude Plaintiff from

5

work as a non-SLSPA member District One pilot, SLSPA and its members began filing

false and malicious complaints to the Coast Guard and others alleging that they feared for

their safety at the hands of Plaintiff." Id. ¶ 23. The U.S. Coasts Guard investigated these

allegations and found them to be without merit. Id. ¶¶ 24.  Consequently, Plaintiff did work

as an independent pilot in District One during the 2001-2003 shipping seasons.  See

Menkes v. Dep't of Homeland Sec., 402 F. Supp. 2d at 206.

 Nevertheless, at the end of the 2003 shipping season

> the Director informed the SLSPA and the plaintiff that his status [as an
> independent pilot] would not continue for the 2004 season.   On January 22,
> 2004, the Director clarified that the plaintiff's previous status as an
> independent pilot was not a "permanent circumstance" but that it was
> "predicated" upon his "determination" that the SLSPA could not provide
> adequate pilotage service at that time.
>
> On January 28, 2004, the plaintiff timely appealed the Director's decision that
> the determination to dispatch plaintiff as a pilot in District One during the
> 2003 season would expire at the end of the 2003 navigation season.
> Plaintiff argued that the SLSPA could not compel the plaintiff's participation in
> their association and that the regulations do not allow the Coast Guard to
> show "employment preference" for registered pilots in associations.
>
> On April 12, 2004, Rear Admiral T.H. Gilmour, Assistant Commandant for
> Marine Safety, Security and Environmental Protection, upheld the Director's
> decision.   He reiterated that only under "extraordinary circumstances" (e.g.,
> when a pool, like the SLSPA, is not providing pilotage services), will the
> Director take action to order any U.S. registered pilot to provide pilotage
> services.   The Assistant Commandant further stated that he would continue
> to monitor the circumstances to determine if independent pilotage services
> would be required for the 2004 season.

Id. at 206-07.

On August 26, 2004, Plaintiff commenced an action in the United District Court for

the District of Columbia against United States Department of Homeland Security, the

United States Coast Guard and Rear Admiral Gilmour seeking an order reinstating his

6

status as an "independent pilot" in District One.  See Menkes v. Dep't of Homeland Sec., 402 F. Supp.2d 204.  In that action, Plaintiff asserted that the defendants were violating his First Amendment right to freedom of association by requiring all pilots in District One "to become shareholding members of the SLSPA," see Def. Ex. 2 (Compl. in Menkes v. Dep't of Homeland Sec., 402 F. Supp.2d 204 ) ¶ 50; were violating his Fifth Amendment right to due process by failing to provide "an appropriate hearing or forum within which to raise" his challenges to the Coast Guard's 2004 determination that pilots in District One would be drawn from the SLSPA pool, id. ¶¶ 55-60; and violated the Administrative Procedures Act (APA) by arbitrarily determining in 2004 that pilotage services in District One would be drawn from the approved pilotage pool. Id. ¶¶ 55-60.

On September 29, 2005, the District of Columbia dismissed Plaintiff's action.  See Menkes v. Dep't of Homeland Sec., 402 F. Supp.2d at 210-211.  On the APA claim, the district court found that

> given the nature of the expertise needed to make the determination of whether or not independent pilots are needed, the lack of "judicially manageable" standards, and the deference accorded the agency's own interpretation, the decision in question here is a matter "committed to agency discretion by law."   Accordingly, plaintiff's Great Lakes Pilotage Act claims are not properly before this Court and are dismissed.

Id. at 209.  The district court also found that Plaintiff failed to state a claim under the First Amendment because Plaintiff was, and is not, required to join SLSPA as a condition of employment. Id. at 209 ("Defendant Gilmour's letter stating that the plaintiff is 'free to apply to the SLSPA' and/or 'free to apply to other pilotage associations' comports with existing law that *allows* for independent pilots, but places the *primary responsibility* of providing pilotage service on the established pools.  Simply stated, defendants do not *require* the

plaintiff to join the SLSPA as a condition to employment.")(emphasis in original).  Finally,

the district court found that Plaintiff had failed to state a claim under the Fifth Amendment

because

> the pertinent statutes themselves do not expressly create an entitlement to the authorization of working as an independent pilot in a district with an approved pilotage pool.  Indeed, the statute and the agency's interpretation of the statute caution against any reliance upon working as an independent pilot by reiterating that the Director must first determine that "extraordinary circumstances" exist rendering independent pilots necessary.  Thus, the statute does not "secure" the benefit nor "support" the plaintiff's entitlement to independent pilot status.

Id. at 210.

Plaintiff commenced this action on March 16, 2006 contending that  "[t]he SLSPA  .

. .  has abused its status as a voluntary pilotage pool and has instead monopolized pilotage

business in District One." Compl. ¶ 13. In this regard, Plaintiff alleges:

> The SLSPA does not operate a pilotage pool on a voluntary basis. Instead it operates the pilotage pool exclusively for its own members. Indeed, in order to work through the so-called "voluntary" pool of pilots operated by the SLSPA, the SLSPA aggressively seeks to require that a pilot become – and remain – a full member of the SLSPA. The SLSPA maintains sole authority over who may become a member of the SLSPA. In order to become a member of the SLSPA, pilots are required, inter alia, to purchase a share in Seaway Pilots Inc., a private corporation that owns pilot boats and property. Each share is currently worth approximately sixty thousand dollars ($60,000.00). In order to become a member of the SLSPA, a pilot must be recommended to the U.S. Coast Guard for full registration by the voting members of SLSPA. The SLSPA requires its members to pool their earnings and pay expenses, and then divide the remaining amounts among themselves.
>
> Furthermore, the SLSPA also engages in legislative, political and lobbying activities. The SLSPA also aggressively seeks to make sure that non-SLSPA members do not perform pilotage duties in District One. In this regard, the SLSPA operates much like a medieval guild. As such, it limits District One pilotage work opportunities only to those pilots that it allows to become – and remain – shareholding members of the SLSPA.

Id. ¶¶ 14-16.

>Plaintiff asserts that he

>has executed an authorization agreeing to permit SLSPA to deduct appropriate fees and expenses from his wages and agreeing to be bound to the SLSPA's rules. The SLSPA, however, continues to refuse to permit Plaintiff to work through the pilotage pool in District One as an independent pilot despite the fact that there continues to be a significant shortage of pilots in District One. The SLSPA has advised others, including the Canadian pilotage pool that Plaintiff was to be removed from the list of eligible pilots in District One.

>* * *

>The SLSPA and its officers and members have maliciously sought to prevent Plaintiff from working as a pilot in District One in order to preserve for themselves exclusive control over pilotage business in District One [and] . . . have conspired to blacklist Plaintiff and prevent him from working in District One.

Id. ¶ 26-28, 30-31.

Plaintiff alleges in Count I of the complaint, entitled "Monopoly," that "[t]he very nature of, organization, membership requirements, operation and structure of the SLSPA constitute an illegal restraint of trade in violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1." Id. ¶ 36. He alleges in Count II, entitled "Conspiracy in Restraint of Trade," that "[t]he SLSPA will not allow Plaintiff to obtain work through the pilotage pool because he is not a member of the SLSPA" and that "[b]y engaging in such conduct, the SLSPA is engaging in a conspiracy in restraint of trade in violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1 *et seq.*." Id. ¶¶ 42-43. Plaintiff alleges in Count III, entitled "State Law Monopoly and Conspiracy in Restraint of Trade," that "[b]y engaging in its malicious and exclusionary conduct toward Plaintiff and by monopolizing pilotage opportunities as described in this complaint, Defendant has violated New York State's General Business Law Section 340

9

('Donnelly Act')." Id. ¶ 45.  And in Count IV, entitled "Violation of Plaintiff's First Amendment

Rights," he alleges that "Defendant's conduct . . . and the requirement for full membership

in the SLSPA as a condition of working as a District One pilot, infringes upon Plaintiff's

freedom of association as guaranteed in the First Amendment to the United States'

Constitution." Id. ¶  48.

Plaintiff seeks a judgment compensating him for purported loss of employment

opportunities since 2004; reinstating his "shipping status as an independent pilot for the

2004 and subsequent shipping seasons;" permitting him "an opportunity to work as a pilot

in District One" without requiring him to become a member of the SLSPA; preventing the

SLSPA from "interfering with Plaintiff's ability to work as a District One pilot" and from

"monopolizing pilotage opportunities in District One;" and treble damages.  Compl. p. 10.

## IV.  DISCUSSION

### a.  Antitrust Injury

Defendant argues that Plaintiff's federal antitrust claims fail because Plaintiff has not

asserted a viable antitrust injury. The Court agrees.

As the Second Circuit recently explained:

> The fact that [a] private [plaintiff has] been injured by acts that violate the
> antitrust laws is not enough to confer standing to sue.  Whether the relief [he]
> seek[s] is legal or equitable, plaintiff must demonstrate that [he] [himself has]
> have sustained an "*antitrust* injury, which is to say injury of the type the
> antitrust laws were intended to prevent and that flows from that which makes
> defendants' acts unlawful."  Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429
> U.S. at 489, 97 S.Ct. 690 (emphasis in original);  see also Cargill, Inc. v.
> Monfort of Colo., Inc., 479 U.S. at 110-13, 107 S.Ct. 484.

Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 438 (2d Cir. 2005).   Thus,

to establish antitrust injury, "a plaintiff must show (1) an injury-in-fact; (2) that has been

caused by the violation; and (3) that is the type of injury contemplated by the statute." <u>Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 220 (2d Cir. 2004). Plaintiff's claim fails under the second and third factors.

On the third factor, the issue is whether defendant's conduct negatively affected competition, not whether it negatively affected a competitor. <u>Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.</u>, 429 U.S. at 488 ("'[T]he antitrust laws ... were enacted 'for the protection of *competition*, not *competitors*.'"") (quoting <u>Brown Shoe v. United States</u>, 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962) (emphasis in original)). As the Southern District recently stated:

> Plaintiffs can recover under the antitrust laws only if defendants' conduct is "competition-reducing." <u>Atl. Richfield Co. v. USA Petroleum Co.</u>, 495 U.S. 328, 343-44 (1990). The challenged agreement can be unreasonable only if it "has had an actual adverse effect on competition as a whole in the relevant market," not just on the [plaintiff] as a competitor. <u>Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.</u>, 996 F.2d 537, 543 (2d Cir.1993), <u>cert. denied</u>, 510 U.S. 947 (1993).

<u>Reading Int'l Inc. v. Oaktree Capital Managment, LLC</u>, 2007 WL 39301 at * 13 (S.D.N.Y. Jan. 8, 2007).

Nothing asserted in the complaint indicates that the SLSPA has taken action that would affect the ability of any competitor to enter the market provided the competitor was qualified to serve as a pilot and willing to join the SLSPA during those periods when the Coast Guard decides not to use independent pilots. Both of these determinations - qualification as a pilot and use of pilots in District One only from the approved pilotage pool - are made by the United States Coast Guard, not the SLSPA. <u>See</u> 46 U.S.C. § 9304(a), (b); 46 C.F.R. §§ 401.100, 401.300, 401.320. As indicated above, the Coast Guard

approves the number of registered pilots, 46 C.F.R. § 401.220; determines whether it will draw from a pilotage pool or use independent pilots, 46 C.F.R.  401.720(b); approves the nature, organization, and operation of pilotage associations, 46 C.F.R. § 401.320; approves and oversees the organizational structure and working rules for the pilots, 46 C.F.R. § 401.340; and determines the rates and service standards of pilotage services. 46 C.F.R. § 401.405.  There are no allegations that the SLSPA has taken some action that restricted rates charged for pilotage services, compensation, trip assignments, or other economic considerations of competition in District One. While Plaintiff has asserted that the SLSPA has opposed his work as an "independent" pilot in District One (an effort that apparently proved fruitless for the SLSPA), he has not alleged that the SLSPA has denied him membership.

Further, there are no allegations that the SLSPA is requiring Plaintiff (or anyone else) to do or pay anything beyond what all members must do or pay.  While Plaintiff may not want to be bound by the SLSPA's work allocation rules,  purchase a share in the Seaway Pilots Inc., or pool a portion of his earnings as a condition of membership in the SLSPA, the federal regulations governing pilotage pools contemplate that members will be required to comply with the pool's rules,  see  46 C.F.R. § 401.340(a),[2]  share expenses, see 46 C.F.R. § 401.340(b),[3]  and purchase an equity interest in the association. See 46

---

[2] 46 C.F.R. § 401.340(a) provides:

(a) United States or Canadian registered pilots utilizing the facilities and dispatching services of any authorized pool shall comply with its working rules approved under § 402.320, except to the extent inconsistent with the dispatch orders of the Director under § 401.720(b), and with other rules of the pool that are related to those facilities and services.

[3] 46 C.F.R. § 401.340(b) provides:

(continued...)

12

C.F.R. 401.320(b).[4]   Because the Coast Guard has determined that, at present, all pilots in District One must come from the SLSPA pilotage pool, and because all other "competitors" (i.e. eligible pilots in District One) must therefore abide by the SLSPA's rules and pay the costs associated with membership in the SLSPA, the imposition of these rules, the membership fees, and financial obligations attendant with membership in the SLSPA is simply a part of doing business shared by all eligible pilots in District One.  Hence, these requirements are not, in and of themselves, anticompetitive.[5]

Rather, Plaintiff's grievance appears to be that members of the SLSPA took action against him individually that inhibits his desire to serve as an independent pilot in District One.  See Compl. ¶ 21 ("[T]he SLSPA and its officers sought *to prevent him* from working as *an independent registered pilot*.")(emphasis added), ¶ 23 ("[I]in a further concerted effort *to exclude Plaintiff* from work as a non-SLSPA member District One pilot, SLSPA and its members began filing false and malicious complaints to the Coast Guard and others

---

[3](...continued)

The voluntary associations of U.S. Registered Pilots authorized to establish a pilotage pool may require a U.S. Registered Pilot to execute a written authorization for the pool to bill for services, deduct authorized expenses, and to comply with the working rules and other rules of the pool relating to such facilities and services.  Facilities and services of the pool may be denied to any U.S. Registered Pilot who fails or refuses to execute such authorizations

[4]46 C.F.R. 401.320(b) provides:

No voluntary association shall be authorized to establish a pool unless:

* * *

(b) The stock, equity, or other financial interests coupled with voting rights or exercise of any right of control in the management of the voluntary association is held only by member Registered Pilots registered pursuant to § 401.200, § 401.210, or § 401.220(e), excluding Applicant Pilots.

[5]The Court offers no opinion on whether, under federal regulations, the SLSPA may properly require all members to purchase a share in the Seaway Pilots Inc. as a condition of membership in the SLSPA.  The Court's inquiry is limited to whether the condition is anticompetitive.

alleging that they feared for their safety *at the hands of Plaintiff.*")(emphasis added); ¶ 27 ("The SLSPA, however, continues to refuse *to permit Plaintiff* to work through the pilotage pool in District One as *an independent pilot* despite the fact that there continues to be a significant shortage of pilots in District One.")(emphasis added);  ¶ 28 ("The SLSPA has advised others, including the Canadian pilotage pool, *that Plaintiff* was to be removed from the list of eligible pilots in District One.")(emphasis added).  When boiled to its core, the claim is not that the SLSPA's membership requirements are anticompetitive, but rather that Plaintiff himself should be afforded a competitive advantage (i.e. obtaining work in District One without complying with the SLSPA's rules and regulations) and be excused from federal regulatory oversight that governs this profession.  Such individual injury does not constitute actionable antitrust injury, see Anheuser Busch, Inc. v. G. T. Britts Distributing, Inc., 44 F. Supp. 2d 172, 174-75 (N.D.N.Y. 1999), nor were the antitrust laws implemented as a means to override regulatory oversight of this industry.

Assuming *arguendo* that required membership in the SLSPA could be deemed an anticompetitive injury, the claim nevertheless fails for lack of causation. See Blue Tree Hotels, 369 F.3d at 220 (In order to establish causation, an antitrust plaintiff must show that the defendant's "violation was at least a material cause of the plaintiff's injury.")(quoting Bohack Corp. v. Iowa Beef Processors, Inc., 715 F.2d 703, 710-11 (2d Cir.1983)).  As indicated, the Coast Guard determines whether adequate and efficient pilotage service is being provided in District One, 46 C.F.R. §§ 401.300, 401.720(b), and is afforded discretion to use "independent" non-SLSPA members when it determines that pilotage

14

services through the voluntary association is inadequate.  46 C.F.R. § 401.720(b).[6]  When

the Coast Guard determines that the voluntary association is providing adequate pilotage

services, it may determine - as it did here - to draw pilots only from the voluntary

association.  It is not the SLSPA that determines that a prospective pilot in District One

must join the pilotage pool. Thus, to the extent Plaintiff's complaint is that he is injured

because he must join the SLSPA in order to obtain pilotage work, his injury is caused by

the determination of the United States Coast Guard - not the SLSPA.

Accordingly, the Court finds that Plaintiff has failed to state an actionable antitrust

injury.

### b.  Group Boycott and Conspiracy Claims

Further, even assuming that Plaintiff asserts a viable antitrust injury, his group

boycott and conspiracy claims fail as a matter of law. A group boycott claim is a type of

monopoly claim brought under federal antitrust law.  Group boycotts "generally consist of

agreements by two or more persons not to do business with other individuals, or to do

business with them only on specified terms."  Balaklaw v. Lovell, 14 F.3d 793, 800 (2d Cir.

1994).  To succeed on a group boycott or refusal to deal claim, a plaintiff must show that

various parties intended either (1) to restrain competition, or (2) to enhance or expand an

existing monopoly, and also that the parties have acted coercively.  Official Airline Guides,

Inc. v. FTC, 630 F.2d 920, 927-28 (2d Cir. 1980), cert. denied, 450 U.S. 917 (1981).

Similarly, a claim based on a conspiracy in restraint of trade requires "some form of

---

[6] Indeed, Plaintiff worked as a independent pilot in District One for the 2001-2003 shipping seasons and was not a member of the SLSPA. See Compl. ¶¶  19 - 20; Menkes v. Dep't of Homeland Sec., 402 F. Supp. 2d at  205-210.

concerted action between at least two legally distinct economic entities," and a showing that the concerted action constitutes or constituted an unreasonable restraint on trade. Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates, Inc., 996 F.2d 537, 543 (2d Cir. 1993)(citing Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 761 (1984)); see also Belfiore v. New York Times Co., 826 F.2d 177, 181-82 (2d Cir. 1987). A key definitional element of both a group boycott claim and a conspiracy claim is that there be more than one individual entity acting in agreement or concert. See Balaklaw, 14 F.3d at 800; Capital Imaging Associates, P.C., 996 F.2d at 543.

It is settled that a so-called "conspiracy of one" does not create a legally cognizable claim under the antitrust laws. Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771 (1984). Further, officers, agents, or employees of a single entity are legally incapable of conspiring together, at least for purposes of a conspiracy claim. See id. The Supreme Court has held that when "those who would otherwise be competitors pool their capital and share the risks of loss as well as opportunities for profit . . . such joint ventures [are] regarded as a single firm. . . ." Texaco, Inc. v. Dagher, 126 S.Ct. 1276, 1280 (2006)(quoting Arizona v. Maricopa County Medical Soc., 457 U.S. 332, 356 (1982)). Such joint venturers cannot be accused of conspiring together, because to do so would be to accuse the joint venture the individuals have created of conspiring with itself.

Here, Plaintiff alleges that "[i]n order to become a member of the SLSPA, pilots are required, inter alia, to purchase a share in Seaway Pilots Inc., a private corporation that owns pilot boats and property. . . . The SLSPA requires its members to pool their earnings and pay expenses, and then divide the remaining amounts among themselves." Compl. ¶ 15. Thus, Plaintiff asserts that the SLSPA is an economically integrated enterprise similar

16

to that addressed in Texaco, Inc. v. Dagher.  Since the SLSPA is the lone defendant in this action and there are no allegations of a conspiracy or agreement with or between any other entity, the group boycott and conspiracy claims fail as a matter of law.

### c.  Other Grounds for Dismissal of Federal Antitrust Law

Given the above, the Courts finds no reason to address Defendant's other arguments for dismissal of the federal antitrust claims.

### d.  State Law Claims

Plaintiff also asserts both monopoly and conspiracy in restraint of trade claims pursuant to New York State's General Business Law Section 340 ("Donnelly Act").  Compl. at ¶¶ 44-45.   The Donnelly Act was "modeled on the Federal Sherman Act of 1890," and therefore "should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result." X.L.O. Concrete Corp. v. Rivergate Corp., 83 N.Y.2d 513, 528 (1994) (internal quotation marks omitted); see Reading Int'l Inc. v. Oaktree Capital Managment, LLC, 2007 WL 39301 at * 18 ( relying on X.L.O. Concrete Corp. to dismiss Donnelly Act conspiracy claims following dismissal of federal antitrust claims); Kramer v. Pollock-Krasner Foundation,  890 F.Supp. 250, 254 (S.D.N.Y. )("Because the New York Court of Appeals has held that the Donnelly Act was modeled on the Sherman Act and should be construed in light of federal precedent, X.L.O. Concrete Corp. v. Rivergate Corp., 83 N.Y.2d 513, 518, 611 N.Y.S.2d 786, 634 N.E.2d 158 (1994), I will analyze the Sherman and Donnelly Act claims together.").  Like in  Reading Int'l Inc. v. Oaktree Capital Managment, LLC, 2007 WL 39301 at * 18,  Plaintiff has not asserted or

17

argued that any special state policy or any provision unique to the Donnelly Act requires a different result with respect to its Donnelly Act claims. Thus, in light of the Court's determination on Plaintiff's Sherman Act claims, Plaintiff's claims under the Donnelly Act fail as well. Id.  The Court does not reach Defendant's preemption argument.

### e.  First Amendment Claim

Finally, Plaintiff asserts that "the requirement for full membership in the SLSPA as a condition of working as a District One pilot [] infringes upon Plaintiff's freedom of association as guaranteed in the First Amendment to the United States' Constitution." Compl. ¶ 48.  Assuming without deciding that the Court has subject matter jurisdiction to address the claim and that the required membership in the SLSPA constitutes a violation of the First Amendment's freedom of association clause, see Jensen v. Farrell Lines, Inc ., 625 F.2d 379, 387-90 (2d Cir. 1980) (finding subject matter jurisdiction but also finding that no First Amendment violation occurred even though continued employment was conditioned on leaving one union and joining another union of employer's choice), the claim fails because Plaintiff has already litigated this same First Amendment claim against the United States Coast Guard and lost. See Menkes v. Dept. of Homeland Sec., 402 F. Supp. 2d at 209-210.  He cannot re-litigate the claim here simply by substituting the SLSPA for the Coast Guard. See Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998)(Collateral estoppel will apply to bar the relitigation of an issue where: "(1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final

18

judgment on the merits.'")(quoting <u>Interoceanica Corp. v. Sound Pilots, Inc.</u>, 107 F.3d 86, 91 (2d Cir. 1997)); <u>c.f</u> <u>Wilder v. Thomas</u>, 854 F.2d 605, 621 (2d Cir. 1988)(applying New York's collateral estoppel rules).

Further, the claim fails for lack of causation.  Given the regulatory scheme, it is the decision of the United States Coast Guard that requires Plaintiff's membership in the SLSPA as a condition of working as a District One pilot, not that of the SLSPA. Accordingly, Plaintiff's First Amendment claim is dismissed.

## V.  CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED** and the action is **DISMISSED.**

**IT IS SO ORDERED**.

DATED:<u>January 17,2007</u>

Thomas J. McAvoy
Senior, U.S. District Judge